UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JENNY YOO COLLECTION, INC., a New York corporation, | Case No. 16-CV-2647 |
| Plaintiff, | **JURY TRIAL DEMAND** |
| v. | **COMPLAINT FOR PATENT INFRINGEMENT, FEDERAL FALSE DESIGNATION OF ORIGIN AND UNFAIR COMPETITION, FEDERAL TRADEDRESS INFRINGEMENT, STATE UNFAIR COMPETITION COMMON LAW TRADEDRESS INFRINGEMENT, FEDERAL TRADEMARK INFRINGEMENT AND UNJUST ENRICHMENT** |
| DAVID'S BRIDAL, INC., DBD INC. and CLAYTON, DUBILIER & RICE, INC. | |
| Defendants. | |

Plaintiff Jenny Yoo Collection, Inc. ("Plaintiff" or "JY") complains and alleges as follows against Defendants David's Bridal, Inc. ("DBI"), DBD Inc. ("DBD") and Clayton, Dubilier & Rice ("CDR") (collectively "David's Bridal" or "defendants").

### THE NATURE OF THE ACTION

1.      JY was formed when its founder, Chief Executive Officer and President, Jenny Yoo, recognized the absence in the market of stylish, quality bridesmaid dresses. The Company's initial focus was to create a collection of bridesmaid dresses to fill this gap in the market.  JY launched its first collection of bridesmaid dresses in 2002. Since then, JY has expanded dramatically, and Jenny Yoo has designed many stylish and well-received wedding dress and bridesmaid dress collections.

2.      JY revolutionized the bridal gown industry in 2012 when it introduced its wildly popular, convertible "Aiden" and "Annabelle" bridesmaid dress designs, products that dramatically changed the way consumers view bridal and bridesmaid dresses. JY markets these dresses under the "NABI by Jenny Yoo" and "Jenny Yoo Collection" trademarks. Reviewers,

analysts and consumers immediately recognized the convertible dress as a "game changer." Before the JY's convertible dress, convertible dresses were bulky, awkward and utilitarian, requiring that conversions be made by tying together components of the dress in different and often unattractive configurations. The JY convertible dress design was radically different. It provided for use of lightweight material with two rear and two front convertible panels attached at the waist seam that blended seamlessly into the design of the bottom part of the dress, and could be easily raised by hand and rearranged for purposes of converting the dress into different neckline styles and inherently attractive, elegant looks. Because the design permitted conversion of the dress into different "looks", bridesmaids wearing the dress could express their individuality while wearing matching dresses. This innovative, elegant and visually distinct design was highly appealing to consumers, and it found almost immediate success and acclaim within the market for bridal dresses (and in particularly, bridesmaid dresses). While the JY convertible dress can be worn in many different configurations, it also can be worn in its natural form as a strapless dress without moving the panels from their natural position.

3.      JY's bridesmaid and wedding designs, including the convertible dress designs at issue in this case, have been featured on various network television programs, such as NBC's "Today Show" and "Fab Life", and local television programs in major markets throughout the United States, and major publications such as Martha Stewart, Martha Stewart Weddings, The Knot,  Brides Magazine and many others. JY's convertible bridesmaid dress designs have become famous both within the industry and among consumers.

4.      JY's creative achievements have resulted in intellectual property protection for its innovations, including issued design patents, pending utility patents, trademarks, and trade dress protection. Nevertheless, JY's innovations have been the subject of widespread emulation by its

competitors, who have attempted to capitalize on JY's success by imitating JY's innovative, elegant, and distinctive product designs. One of the principal imitators is David's Bridal, which has introduced and sold lines of bridesmaid dresses, which it uses to compete directly with JY's patented convertible dresses. Instead of pursuing independent product development or licensing products from third parties, David's Bridal has chosen to slavishly copy JY's innovative and distinctive design, in violation of JY's valuable intellectual property rights. David's Bridal passes off JY's famous convertible dress designs as its own. As alleged below in detail, David's Bridal has made its lines of convertible dresses work and look like JY's patented dress designs, engaging in widespread patent, trademark and trade dress infringement. David's Bridal has even misappropriated and copied JY's distinctive approach to marketing, using models wearing its "knock-off" dresses in poses and presentations that are substantially identical to the poses and presentations presented by JY on its web-site and in its advertising and promotional materials.

5.     By this action, JY seeks to put a stop to David's Bridal's illegal conduct and obtain compensation for the violations that have occurred thus far.

## THE PARTIES

6.     JY is a New York corporation having its principal place of business at 132 West 36th Street, 9th Floor New York, New York 10018.

7.     On information and belief, DBI is a Florida corporation, having its principal place of business at 1001 Washington Street, Conshohocken PA 19428.

8.     On information and belief, DBD is a Delaware corporation, having its principal place of business at 1001 Washington Street, Conshohocken, PA 19428.

9.     On information and belief, CDR is a Delaware corporation, having its principal place of business at 375 Park Avenue, 18th Floor, New York, New York 10152.  CDR is the

3

principal investor in, and corporate parent of, DBI and DBD. On information and belief, CDR "Partner" Kenneth A Giuriceo is a member of CDR's Management Committee with responsibility for managing the business and operations of DBI and DBD. On information and belief, CDR directs the operations and business strategies of DBI and DBD

10.    David's Bridal operates more than 290 stores nationwide and sells bridal gowns, and dresses for bridesmaids, flower girls, junior bridesmaids, and mothers of the wedding. It also sell's men's Tuxedos and accessories.  It sells its gowns and dresses primarily under the "David's Bridal" brand name. It also sells a small number of relatively low cost "designer brand" gowns, including dresses designed by Vera Wang and Jenny Packham. David's Bridal is a prominent, well-known competitor of JY. David's Bridal stores have long been understood within the Bridal dress industry as featuring relatively low cost gowns and dresses for budget conscious consumers.

## JURISDICTION

11.    This Court has subject matter jurisdiction under 15 U.S.C. § 1121 (action arising under the Lanham Act); 28 U.S.C. § 1331 (federal question); 28 U.S.C. § 1338(a) (any Act of Congress relating to patents or trademarks); 28 U.S.C. § 1338(b) (action asserting claim of unfair competition joined with a substantial and related claim under the trademark laws); and 28 U.S.C. § 1367 (supplemental jurisdiction).

12.    This Court has personal jurisdiction over CDR because it maintains its principal place of business within this District. This Court has personal jurisdiction over CDR, DBI and DBD because each of these entities has committed and continues to commit acts of infringement in violation of 35 U.S.C. § 271 and 15 U.S.C. § 1114 and 1125, and places infringing products into the stream of commerce, with the knowledge or understanding that such products are sold in

the State of New York, including in this District. The acts by CDR, DBI and DBD cause injury to JY within this District.

13.     Upon information and belief, David's Bridal derives substantial revenue from the sale of infringing products within this District, expects its actions to have consequences within this District, and derives substantial revenue from interstate and international commerce.

14.     Upon information and belief,   David's Bridal maintains and operates at least 15 retail stores within 100 miles of this Court, and maintains at least 17 retail stores within the State of New York.

15.     Upon information and belief, David's Bridal also participates in "Bridal Fashion Week" which is held twice annually within this District.

16.     Upon information and belief, David's Bridal sell substantial amounts of infringing products to consumers who reside within the State of New York through its internet-based e-commerce web-site and internet web-sites operated by others, such as Amazon.com

## VENUE

17.     Venue is proper within this District under 28 U.S.C. §§ 1391(b) and (c) because David's Bridal transacts business within this district and offers for sale in this district products that infringe the JY patents, trade dress, and trademarks. In addition, venue is proper because CDR's principal place of business is in this District, JY's principal place of business is in this district and JY suffered harm in this district. Moreover, a substantial part of the events giving rise to the claim occurred in this district.

## BACKGROUND

### JY'S Innovations

18.     JY is a leading designer and manufacturer of bridesmaid gowns, wedding gowns,

and other wedding apparel. JY was founded by Jenny Yoo, who launched her first collection of bridesmaid dresses in 2002. As a result of the extraordinary creativity of Jenny Yoo and JY's significant investment in research and development, in 2012, JY introduced into the market its innovative, convertible "Aiden" and "Annabelle" bridesmaid dress designs that have changed the face of the bridal fashion industry. JY's convertible bridesmaid gowns were unique when JY introduced them into the market because they are constructed with two front and two rear convertible panels attached to the waist of the dresses which blend seamlessly into the bottom of the dress. These panels are easily reconfigured into many different "looks", and their design and placement at the waist of the dresses allow the dresses to be made of lightweight material. The dresses feature convertible panels that can be raised and manipulated to create alternative necklines and skirt details. JY introduced into the market both short and floor length dresses with these unique and distinctive convertible features.

19.    As a direct result of its innovative and distinctive design and its cutting edge technological features, JY's convertible bridal gowns were an instant success, and they immediately became uniquely associated with JY as its source. Reviewers and analysts universally praised JY's bridesmaid gowns for their "game changing" features. Sales were strong, and the popularity of this new design contributed substantially to the success of the JY brand and JY's reputation as a leader in the market for bridal and bridesmaid designs.

20.    JY's convertible bridesmaid dresses, sold under the "Nabi by Jenny Yoo" and "Jenny Yoo Collection" brand names, are sold in major retail stores throughout the United States, such as, for example, Nordstroms. In substantial part because of these convertible bridesmaid dress designs, Jenny Yoo has become recognized nationally as one of the leading and most successful designers in the bridal industry. Since 2012, JY has sold more than 37,000 of

these convertible dresses in Nordstroms alone, resulting in revenues from this single source in excess of $10 million.

21.    In 2012, JY began a national campaign to market and sell "Aiden" style number 1282 convertible bridesmaid dress, now sold under the "Nabi by Jenny Yoo" and "Jenny Yoo Collection" brands.  The following is a drawing that shows this dress in configurations which vary depending upon the placement of the flaps attached to the front and rear waist band of the dress, together with a technical sketch showing the placement of two panels hanging downward from the front waist portion of the dress and two panels hanging downward from the rear waist portion of the dress.  This design was revolutionary, because no previous design for a convertible bridesmaid dress involved placement of flaps in this manner.



"Aidan" convertible dress (Style #1282)

22.    Soon thereafter, JY also introduced another version of essentially the same

design, which it calls "Annabelle, style number 1452", and sells under the "Nabi by Jenny Yoo" and "Jenny Yoo Collection" brand names. The Annabelle is essentially the same as the Aidan except that the band attached to the waist in the Aiden design is removed, and replaced with an attachable sash.  It contains the same revolutionary feature as the Aiden—namely, two front and two rear flaps that flow downward from the waist. The following is a sketch showing the Annabelle design, and a technical drawing of the design showing the flaps flowing downward from the front waist and rear waist position.



22.     With the exception of the waist band, the ordinary observer would find no discernable difference between the Aiden and Annabelle designs.   Moreover, in most

configurations, the difference in the waist band is not noticeable. This is because in many configurations of the Annabelle design, the flaps are wound around the waist, and the appearance at the waist then becomes exactly the same as the Aiden design. Consumers and industry professionals alike would recognize that both the Aiden and Annabelle designs feature the same unique placement and configuration of the flaps—a configuration that was a radical departure from prior convertible bridesmaid dress designs. From an ornamental perspective, this unique placement and configuration allows the flaps to blend seamlessly and elegantly into the gown. This is true whether the gown is worn in a strapless configuration with all four flaps facing downward from the waist, or whether one or more of the straps is raised to change the "look" of the gown. This seamless, elegant blending of the flaps into the gown is one of the prominent features of the Aidan and Annabelle designs—contributing substantially to their widespread popularity. From the standpoint of the ordinary observer, these two designs are essentially the same—because of the placement of and uses for the convertible flaps.

23.    Soon after JY introduced the Aiden and Annabelle dresses into the market, they became immensely popular. These "NABI by Jenny Yoo" designs received extensive press coverage and many positive reviews both within industry circles and publications that focus on the consumer market. And sales skyrocketed. At present, JY's "Aiden" and "Annabelle" dresses are on sale in major department stores and prominent bridal shops and boutiques in virtually every major metropolitan market in the United States (and most small towns as well). They are also sold on numerous on-line, e-commerce web-sites.

24.    The fame of these dress designs is underscored by the existence of a substantial secondary market for these dresses on eBay—where consumers sell used clothing. At any one

time, hundreds, if not thousands, of "Aiden" and "Annabelle" dresses are available for resale on eBay.

25.    Indeed, year after year, the "Aiden" and "Annabelle" dress designs are among the best-selling bridesmaid designs nationwide. So widespread is their penetration within the market for bridesmaid and wedding dresses, that the unique look and configuration of these designs is now closely associated in the minds of average wedding and bridal-wear consumers with JY (and Jenny Yoo as the designer and founder of JY.)  It is fair to say that in the minds of most consumers, these famous designs have become synonymous with the designer Jenny Yoo and her company, JY.

26.    Within the bridal dress design industry, at both the wholesale and retail store level, the "Aiden" and "Annabelle" dress designs have become ubiquitous. Consumers who see these dresses hanging in racks in stores or photographs of them on e-commerce web-sites invariably associate the look and configuration of these dresses with JY and its founder, Jenny Yoo. The "Aiden" and "Annabelle" convertible dress designs, sold under the "Nabi by Jenny Yoo" and "Jenny Yoo Collection" brand names, have become among the most well-known bridal dress designs in the United States, closely associated in the minds of ordinary consumers with JY and its founder, Jenny Yoo.

## JY'S INTELLECTUAL PROPERTY RIGHTS

### JY's Design Patents

27.    JY has protected its innovative designs and cutting-edge technologies through a broad range of intellectual property rights. Recognizing that its innovative designs involve both unique ornamental designs and functional innovations, JY has sought both design patents and utility patents. Since 2012, JY has notified the public in its web-site and marketing materials that

these patents were either pending or issued (as appropriate in the time frame).   The United States Patent Office has issued the design patents listed below. JY's design patents cover the ornamental features of JY's "Aiden" and "Annabelle" bridesmaid dress designs, such as two rear and two front convertible panels attached at the waist which blend naturally and seamlessly into the dress. JY owns all right, title, and interest in and to each of the asserted design patents listed below, copies of which are attached as Exhibits 1 and 2. The designs covered by these patents are distinctive and serve to identify JY as the source of the bridesmaid dresses which embody such designs. Moreover, the features covered by these patents are not dictated by function; rather, they are the product of aesthetic choices made by Jenny Yoo when she created the designs.

| Patent Number | Title |
|---|---|
| D 698,120 (the "'D120 patent") | Dress |
| D744,723 (the "'D723 patent") | Convertible Dress |

## JY'S Utility Patent Applications

28.     JYs utility patent applications cover many of the elements that have come to be associated with JY's convertible bridesmaid dresses. These include (a) a patent covering functional features of the convertible dresses, including the front and rear panels extending downward, attached to the front and rear panels of the gathered skirt with fastening means that allow for multiple adaptations and configuration, and (b) a patent covering unique methods for using a multi-use garment consisting of specified functional convertible and adoptable elements.

29.     These pending patent applications include the following to which JY owns all rights, title, and interest.

| Patent Number | Title |
|---|---|
| 13/657,422 (the "'422 application") | Multi-Use Garment |
| 14/720,453 (the "'453 application") | Multi Use Garment |

### JY's Trademarks and Design Marks

30.     JY owns United States trademark registration number 3339930 for "Jenny Yoo Collection", which was registered on November 30, 2007 and acknowledged by the United States Patent and Trademark Office as incontestable on September 13, 2013. JY also owns United States trademark registration number 4524466 for "Nabi by Jenny Yoo", which was registered on May 6, 2014.

31.     JY also owns common law trademark rights for the brand names, "Nabi by Jenny Yoo", "Aiden" and "Annabelle" which it has used in commerce to market its convertible dress designs since 2012.  JY has filed applications for the combined word/design marks "Nabi by Jenny Yoo", serial numbers 86937259 and 86937318 which are pending before the United States Patent and Trademark Office.

### JY's Trade Dress

32.     JY's bridesmaid dress designs, as covered by the aforesaid design patents, have distinctive, non-functional, ornamental elements that have become associated with JY as their source. In particular, they have two front and two rear panels extending downward from the waist that blend seamlessly into the skirt when worn in a strapless configuration, but which transform into a classic halter, V-neck, or one shoulder strap design when such panels are raised and reconfigured, with the remaining panels continuing to blend seamlessly into the dress. Each of these design configurations is distinctive and serves to identify JY as the source of the

bridesmaid products. Moreover, none of these elements is functional.

33.    JY has used, marked and sold these distinctive design configurations in commerce throughout the United States beginning in 2012 and continuously thereafter, and consumers identify JY as the source of these designs. Accordingly, JY has acquired common law trade dress rights in these designs.

**Trade Dress at Issue**

34.    The following non-functional elements of JY's Aidan product designs comprise the first product trade dress configuration at issue in this case (the "JY Product Configuration Trade Dress"):

- a dress having a strapless upper garment (bodice) portion covering an area above the waist of the user having a front and rear portion;

- a skirt having a front portion and rear portion attached to the upper garment (bodice);

- a waist band attached at the bottom portion of the upper garment (bodice);

- front and rear panels attached to the waist seam of the the skirt, extending downward so that they blend seamlessly with the skirt.

13



35.    The following non-functional elements of JY's Aidan product designs comprise the second product trade dress at issue in this case (the "Second JY Product Configuration Trade Dress"):

- a dress having a strapless upper garment (bodice) portion covering an area above the waist of the user having a front and rear portion;

- a skirt having a front and rear portion attached to the upper garment (bodice);

- a waist band attached at the bottom portion of the upper garment (bodice);

- 2 front and two rear panels attached to the waist seam of the skirt of which both back panels wrap around the front waist and tie at the back waist creating a tied sash configuration

- 2 front panels are raised over the bodice covering both sides of the neckline of the user to create a Classic Halter Strap configuration;

Aidan Halter with Tied Sash look



36.    The following non-functional elements of JY's Aidan product designs comprise

the third product trade dress at issue in this case (the "Third JY Product Configuration Trade Dress"):

- a dress having a strapless upper garment (bodice) portion covering an area above the waist of the user having a front and rear portion;

- a skirt having a front and rear portion attached to the upper garment (bodice);

- a waist band attached at the bottom portion of the upper garment (bodice);

- 2 front and 2 rear panels attached to the waist seam of the skirt of which both back panels wrap around the front waist and tie at the back waist creating a tied sash configuration

- 2 front panels raised over the bodice covering both shoulders of the user to create Criss Cross V-neck configuration.



37.    The following non-functional elements of JY's Aidan product designs comprise the fourth product packaging trade dress at issue in this case (the "Fourth JY Product Configuration Trade Dress"):

- a dress having a strapless upper garment (bodice) portion covering an area above the waist of the user having a front and rear portion;

- a skirt having a front and rear portion attached to the upper garment (bodice);

- a waist band attached at the bottom portion of the upper garment (bodice);

- 2 front and 2 rear panels attached to the waist seam of the skirt of which both back panels wrap around the front waist and tie at the back waist creating a tied sash configuration;

- One front panel extends downward so that it blends seamlessly with the skirt, while the second front panel is raised above the bodice to create a One Panel/One Shoulder configuration covering a portion of the right of left shoulder of the user;



38.     The following non-functional elements of JY's Aidan product designs comprise the fifth product trade dress at issue in this case (the "Fifth JY Product Configuration Trade Dress"):

- a dress having a strapless upper garment (bodice) portion covering an area above the waist of the user having a front and rear portion;

- a skirt having a front and rear portion attached to the upper garment (bodice);

- a waist band attached at the bottom portion of the upper garment (bodice);

- 2 front and 2 rear panels attached to the waist seam of the skirt of which both back panels wrap around the front waist and tie at the back waist creating a tied sash configuration;

- 2 front panels are raised up over the bodice covering and draping over both shoulders of the user to create a Blouson Wrap configuration.



39.     The following non-functional elements of JY's Aidan product designs comprise the sixth product  trade dress at issue in this case (the "Sixth JY Product Configuration Trade Dress"):

- a dress having a strapless upper garment bodice portion covering an area above the waist of the user having a front and rear portion;

- a skirt having a front and rear portion attached to the upper garment (bodice);

- a waist band attached to the bottom portion of the upper garment (bodice);

- 2 front and 2 real panels attached to the waist seam of the skirt, of which both front panels and one or more back panels are raised over bodice to create a One Shoulder Bow configuration covering a portion of the right of left shoulder of the user;

- One back panel may, at the option of the user, extend downward to blend seamlessly with skirt.



40.    The seventh "Annabelle" product configuration trade dress at issue in this case (the "Seventh JY Product Configuration Trade Dress") comprises the First JY Product Configuration Trade Dress, but excluding a waistband  attached at a bottom portion of the upper garment (bodice), with a coordinating detachable sash;



41.     The eighth "Annabelle" product configuration trade dress at issue in this case (the "Eighth JY Product Configuration Trade Dress") comprises the Second JY Product Configuration Trade Dress, but excludes a waistband attached to the upper garment (bodice), and instead features a coordinating detachable sash used to wrap around the waist, with the rear panels extending downward so that they blend seamlessly with the skirt.



Annabelle w/ Sash view

42.    The ninth "Annabelle" product configuration trade dress at issue in this case (the "Ninth JY Product Configuration Trade Dress") comprises the Third JY Product Configuration Trade Dress, but excludes a waistband attached to the upper garment (bodice), and instead features a coordinating detachable sash used to wrap around the waist, with the real panels extending downward so that the blend seamlessly with the skirt;



43.     The tenth "Annabelle" product configuration trade dress at issue in this case (the "Tenth JY Product Configuration Trade Dress") comprises the Fourth JY Product Configuration Trade Dress, but excludes a waistband attached to the upper garment (bodice), and instead features a coordinating detachable sash used to wrap around the waist, with the rear panels extending downward so that the blend seamlessly with the skirt.



44.    The eleventh "Annabelle" product configuration trade dress at issue in this case (the "Eleventh JY Product Configuration Trade Dress") comprises the Fifth JY Product Configuration Trade Dress, but excludes a waistband attached to the upper garment (bodice), and instead features a coordinating detachable sash used to wrap around the waist, with the rear panels extending downward so that they blend seamlessly with the skirt.



45.     The twelfth "Annabelle" product configuration trade dress at issue in this case (the "Twelfth JY Product Configuration Trade Dress") comprises the Sixth JY Product Configuration Trade Dress, but excludes a waistband attached to the upper garment (bodice), with one of the rear panels extending downward so that it blends seamlessly with the skirt.

Annabelle one shoulder bowtie



46.     The foregoing First through Twelfth JY Product Configuration Trade Dresses are collectively referred to herein as the "JY Trade Dress."

## DAVID'S BRIDAL'S INFRINGING PRODUCTS

47.     David's Bridal has imported into or sold in the United States least six products which infringe one or more of  Intellectual Property Rights: (i) Long Versa Convertible Mesh Dress Style # F15782, (ii) Long Versa Convertible Mesh Dress (extra length) Style # 4XLF15782, (iii) Long Versa Convertible Junior Bridesmaid Dress Style # JB9015, (iv) Short

Versa Convertible Mesh Dress Style # F18092, (v) Short Versa Convertible Mesh Dress Style #

2XLF18092, and (vi) Long Tulle Convertible Versa Dress Style # F19114 (collectively the

"Infringing Products"). The following are screenshots from defendants' web-site that show these

dresses:







48.    Rather than innovate and develop its own bridesmaid dress designs, David's Bridal chose to copy JY's designs, and marketed and passed off these designs under its "David's Bridal" brand.

49.    The copying by David's Bridal is so pervasive that the Infringing Products appear to be actual JY dresses—with the same ornamental and functional features. When the Infringing Products are worn in public, there can be little doubt that they would be viewed as JY products based upon the design alone.

50.    David's Bridal had previously designed original weddings and bridesmaid gowns under the "David's Bridal" brand, but those original designs did not embody the distinctive combination of elements of the JY Trade Dress.

51.    In response to competition from JY's innovative and successful designs, David's Bridal chose to infringe JY's patent, trade dress, and trademark rights through the manufacturing, marketing, promotion and sale of the Infringing Products, and it did so willfully to trade upon the goodwill that JY has developed in connection with its innovative and high quality dress designs.

**Infringement of JY's Patents and Trade Dress**

52.    As the side-by-side comparisons shown below reveal, David's Bridal has misappropriated JY's dress design by marketing and selling the Infringing Products in its violation of JY's '723 patent.



Y Aidan (#1282)    JY Aidan (#1282)    David's Bridal (F15782)    JY Annabelle (#1452)    David's Bridal (F19114)

Y Aidan (#1282)    JY Aidan (#1282)    David's Bridal (F15782)    JY Annabelle (#1452)    David's Bridal (F19114)

Aidan (#1282)



JY Aidan (#1282)



David's Bridal (F15782)



JY Annabelle (#1452)



David's Bridal (F19114)



Aidan (#1282)



JY Aidan (#1282)



David's Bridal (F15782)



JY Annabelle (#1452)



David's Bridal (F19114)





ℓ Aidan (#1282)    JY Aidan (#1282)    David's Bridal (F15782)    JY Annabelle (#1452)    David's Bridal (F19114)

ℓ Aidan (#1282)    JY Aidan (#1282)    David's Bridal (F15782)    JY Annabelle (#1452)    David's Bridal (F19114)



JY Aidan (#1282)   JY Aidan (#1282)   David's Bridal (F15782)   JY Annabelle (#1452)   David's Bridal (F19114)

JY Aidan (#1282)   JY Aidan (#1282)   David's Bridal (F15782)   JY Annabelle (#1452)   David's Bridal (F19114)

Y Aidan (#1282)    JY Aidan (#1282)    David's Bridal (F15782)    JY Annabelle ($1452)    David's Bridal (F19114)`

    

Jenny Yoo 1282    David's Bridal (F15782)    David's Bridal  (F19114)

  

Jenny Yoo 1282    David's Bridal (F15782)    David's Bridal (F19114)

  

53.     Each of David's Bridal's infringing Products slavishly embodies the JY Trade

Dress identified above, including:

- a dress having a strapless upper garment (bodice) portion covering an area above

   the waist of the user having a front and rear portion;

- a skirt having a front and rear portion attached to the upper garment (bodice);

- two front and two rear panels attached to the skirt, which extend downward so

   that they blend seamlessly with the skirt, and which can be raised, lowered and

   attached into different configurations to create different design looks, such as a

   strapless configuration, classic halter configuration, Criss-Cross V-neck

   configuration; One Panel/One Shoulder Configuration, Blouson Wrap

   Configuration and One shoulder bow configuration.

54.     David's Bridal's adoption of a trade dress that slavishly copies the JY

Trade Dress, and its reverse passing off of these slavish copies under the David's Bridal brand names, are likely to cause confusion or mistake, or to deceive consumers, purchasers, and others into thinking that David's Bridal's products are JY products, or that they are sponsored by or affiliated with JY, when they are not. The copying is particularly problematic because the JY products are the type of products that will be used in public at various wedding and social events where third parties, who were not present when the products were purchased, will associate them with JY because they have the unmistakable JY look that is created from the various elements of the JY Dress.

55.     Of significant concern for JY is that JY devotes significant resources to develop its innovative dress products, and to market them to an upscale customer base. JY's dress designs are premium-priced products compared to the dresses ordinarily sold by David's Bridal, which has a more budget conscious client base. Part of the cachet of JY's products is the very fact that they consistently stand-out from all of the other products on the market. JY's goodwill among consumers is closely tied to its position a leader and innovator in the bridal and bridesmaid dress industry, which causes each release of a new dress design be highly anticipated among consumers, and allows JY to market and sell them at premium price levels. David's Bridal's flagrant and relentless copying of JY's intellectual property rights not only allows David's Bridal to reap benefits from JY's investment and creative designs, it also threatens to diminish the very important goodwill that JY has cultivated with its dress designs, and threatens JY's ability to sell its products at premium price points.

56.     On information and belief, David's Bridal's marketing and sales personnel have deliberately played up the similarities between the Infringing Products and the JY Trade Dress. On information and belief, Infringing Products have been marketed by David's Bridal as the

dress products that are the closest to the JY Trade Dress—for consumers who wanted a product with the distinctive JY look, but who did not want to pay for the real product.

57.     In view of the brazen and willful copying by David's Bridal, JY is left with no choice but to file this lawsuit in order to protect its valuable intellectual property rights and the dress designs embodied in them.

## FIRST CLAIM FOR RELIEF

### (Trade Dress Infringement)
### (Lanham Act Section 43(a), 15 U.S.C. § 1125(a))

58.     JY incorporates and re-alleges paragraphs 1 through 57 of this Complaint.

59.     JY is the owner of all right and title to the distinctive JY Trade Dress. The JY Trade Dress has acquired secondary meaning, and is not functional.

60.     In addition, based on extensive and consistent advertising, promotion and sales throughout the United States, the JY Trade Dress has acquired distinctiveness and enjoys secondary meaning among consumers, identifying JY as the source of these products.

61.     JY's extensive promotion of the distinctive JY Trade Dress has resulted in JY's acquisition of valuable, legally protected rights in the JY Trade Dress as well as considerable customer goodwill.

62.     David's Bridal has misappropriated the JY Trade Dress by mimicking a combination of several elements of that trade dress in the Infringing Products.

63.     David's Bridal's manufacture, marketing, distribution and sale of the Infringing Products is likely to cause confusion, or to cause mistake, or to deceive the consumer as to the affiliation, connection or association of David's Bridal with JY.

64.     David's Bridal's manufacture, distribution and sale of the Infringing Products enables David's Bridal  to benefit unfairly from JY's reputation and success, thereby giving

David's Bridal's Infringing Products sales and commercial value they would not have otherwise.

65.    David's Bridal's actions constitute unfair competition and false designation of origin in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

66.    David's Bridal knew of the JY Trade Dress when it designed and procured its Infringing Products. Accordingly, David's Bridal's infringement has been and continues to be intentional, willful and without regard to the JY Trade Dress.

67.    JY has been and will continue to be irreparably harmed and damaged by David's Bridals' conduct, and JY lacks an adequate remedy at law to compensate for this harm.

68.    JY is informed and believes, and on that basis alleges, that David's Bridal has gained profits by virtue of its infringement of the JY Trade Dress.

69.    JY also has sustained damages, including but not limited to lost sales, as a direct and proximate result of David's Bridal's infringement of the JY Trade Dress in an amount to be proven at trial.

70.    Because David's Bridal's actions have been willful, JY is entitled to treble its actual damages or David's Bridal's  profits, whichever is greater, and to an award of costs, and, this being an exceptional case in view of David's Bridal's  willful infringement, reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(a).

## SECOND CLAIM FOR RELIEF

### (Common Law Trade Dress Infringement and Unfair Competition)

71.    JY incorporates and re-alleges paragraphs 1 through 70 of this Complaint.

72.    David's Bridal's use of the JY Trade Dress constitutes common law trade dress infringement and unfair competition with JY under the common law of the State of New York.

73.    David's Bridal has infringed the JY Trade Dress by manufacturing, distributing,

marketing and selling the Infringing Products.

74.    David's Bridal's use of these infringing designs on dresses which it manufactures, distributes, markets and sells is likely to cause confusion, or to cause mistake, or to deceive the consumer as to the affiliation, connection or association of David's Bridal with JY, or as to the origin, sponsorship, or approval by JY of David's Bridal's goods, services or commercial activities.

75.    David's Bridal's use of JY Trade Dress enables David's Bridal to benefit unfairly from JY's reputation and success, thereby giving the Infringing Products sales and commercial value they would not have otherwise.  Further, David's Bridal unfairly competes with JY by selling its infringing dress products at a price substantially below the price that JY charges for its substantially identical dresses to the same pool of wholesale and retail customers.

76.    Prior to David's Bridal's first use of the infringing dress designs, David's Bridal was aware of JY's business and had either actual notice and knowledge, or constructive notice of the JY Trade Dress.

77.    David's Bridal's unauthorized use of the JY Trade Dress is likely, if not certain, to deceive or to cause confusion or mistake among consumers as to the origin, sponsorship or approval of the Infringing Products and/or to cause confusion or mistake as to any affiliation, connection or association between JY and David's Bridal.

78.    JY is informed and believes, and on that basis alleges, that David's Bridal's infringement of the JY Trade Dress as described herein has been and continues to be intentional, willful and without regard to JY's rights in the JY Trade Dress.

79.    JY is informed and believes, and on that basis alleges, that David's Bridal has gained profits by virtue of its infringement of the JY Trade Dress.

80.     JY will suffer and is suffering irreparable harm from David's Bridal's infringement of the JY Trade Dress and related unfair competition insofar as JY's invaluable good will is being eroded by David's Bridal's continuing infringement and unfair competition. JY has no adequate remedy at law to compensate it for the loss of business reputation, customers, market position, confusion of potential customers and good will flowing from the David's Bridal's infringing and unfair activities. JY is entitled to an injunction against David's Bridal's continuing infringement of the JY Trade Dress. Unless enjoined, JY will continue its infringing conduct.

81.     Because David's Bridal's actions have been committed with intent to damage JY and to confuse and deceive the public, JY is entitled to punitive damages, in addition to any actual or compensatory damages.

### THIRD CLAIM FOR RELIEF

### (Reverse Passing Off In Violation of 15 U.S.C. § 1125(a))

82.     JY incorporates and re-alleges paragraphs 1 through 81 of this Complaint.

83.     Plaintiff's registrations on the Principal Register for the marks Jenny Yoo Collection® and Nabi by JennyYoo® are conclusive evidence of plaintiff's right to use these marks, pursuant to Lanham Act, 15 U.S.C. § 1115. The registration for the mark Jenny Yoo Collection® is incontestable, which provides conclusive evidence of its validity and of plaintiff's ownership of the mark and of its exclusive right to use the mark in commerce as applied to dresses and gowns.

84.     David's Bridal sells the Infringing Products under the David's Bridal brand name. These dresses are substantially identical to, and incorporate, the trade dress, reflected in, JY's "Aiden" and "Annabelle" dress designs, and infringe JY's design patents (as alleged below). By

selling dresses under the David's Bridal brand name which are substantially identical to JY's "Aiden" and "Annabelle" dress designs, David's Bridal is engaging in reverse passing off in violation of 15 U.S.C. §§ 1114 and 1125(a).

85. David's Bridal's activities have caused, and unless enjoined by this court, will continue to cause, a likelihood of confusion and deception for members of the trade and injury to JY's goodwill and reputation, for which JY has no adequate remedy at law.

86. As a direct and proximate result of David's Bridal's wrongful conduct, JY has been injured in fact and has lost money and profits, and such harm will continue unless David's Bridal's acts are enjoined by the Court. JY has no adequate remedy at law for David's Bridal's continuing violation of JY's rights.

## FOURTH CLAIM FOR RELIEF

### (Infringement of the 'D723 Patent)

87. JY incorporates and re-alleges paragraphs 1 through 86 of this Complaint.

88. The 'D723 Patent claims the design as shown in the drawings contained therein. Each of the Infringing Products is the same, or is substantially identical to, the design claimed in the 'D723 patent as shown in the drawings contained therein.

89. An ordinary observer with an understanding of the relevant prior art in the bridal gown industry, would be deceived into believing that each of the Infringing Products is the same as the patented design of the 'D723 patent

90. David's Bridal has infringed and continues to infringe 'D723 Patent by using, selling and/or offering to sell, in the United States and/or importing into the United States the Infringing Products.

## FIFTH CLAIM FOR RELIEF

### (Infringement of the 'D120 Patent)

91.     JY incorporates and re-alleges paragraphs 1 through 90 of this Complaint.

92.     The 'D120 Patent claims the design as shown in the drawings contained therein. Each of the Infringing Products is the same, or is substantially identical to, the design claimed in the '723 patent as shown in the drawings contained therein.

93.     An ordinary observer, with an understanding of the relevant prior art in the bridal gown industry, would be deceived into believing that each of the Infringing Products is the same as the patented design of the 'D120 patent.

94.     David's Bridal has infringed and continues to infringe the 'D120 Patent by using, selling and/or offering to sell in the United States, and/or importing into the United States dresses the Infringing Products.

## SIXTH CLAIM FOR RELIEF

### (Unfair Business Practices Under New York General Business Law § 349.)

95.     JY incorporates and re-alleges paragraphs 1 through 94 of this Complaint.

96.     The acts of David's Bridal described above constitute unfair business practices in violation of New York General Business Law § 349.

97.     JY has valid and protectable prior rights in the JY Trade Dress. The JY Trade Dress does not serve any function other than to identify JY as the source of its bridesmaid dresses embodying the JY Trade Dress. The JY Trade Dress is inherently distinctive, and through JY's extensive commercial use, has come to be associated solely with JY as the source of the bridesmaid dresses on which it is used.

98.     David's Bridal's infringing use of the JY Trade Dress is likely to cause confusion

as to the source of David's Bridal's products and is likely to cause others to be confused or mistaken into believing that there is a relationship between David's Bridal and JY or that David's Bridal's products are affiliated with or sponsored by JY.

99.     The above-described acts and practices by David's Bridal are likely to mislead or deceive the general public and therefore constitute fraudulent, deceptive and unfair business practices in violation of New York General Business law § 349.

100.    The above-described acts constitute unfair competition under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), trade dress infringement under Section 32 of the Lanham Act, 15 U.S.C. §§ 1125(a) and 1114, and trademark infringement under Section 32 of the Lanham Act, 15 U.S.C. §1114, and are therefore unlawful acts in violation of New York General Business Law§ 349.

101.    David's Bridal acted willfully and intentionally in making and selling the Infringing Products, with full knowledge of JY's prior rights in the distinctive JY Trade Dress, and with an intent to cause confusion or mistake or to deceive customers into believing that there is an affiliation between David's Bridal and JY or between David's Bridal brand bridal dresses and JY's bridal dresses. David's Bridal willfully and in bad faith diverts sales from JY by selling its infringing copies of JY's designs at a price that is significantly lower than the price at which such consumers could purchase JY's authentic products. The unlawful and fraudulent business practices of David's Bridal described above present a continuing threat to, and are meant to deceive members of, the public in that David's Bridal continues to promote its products by wrongfully trading on the goodwill of the JY Trade Dress.

102.    As a direct and proximate result of these acts, David's Bridal has received, and will continue to profit from, the strength of the JY Trade Dress.

103.   As a direct and proximate result of David's Bridal's wrongful conduct, JY has been injured in fact and has lost sales, money and profits, and such harm will continue unless David's Bridal's acts are enjoined by the Court.  JY has no adequate remedy at law for David's Bridal's continuing violation of JY's rights.

104.   David's Bridal should be required to restore to JY any and all profits earned as a result of its unlawful and fraudulent actions, or provide JY with any other restitutionary relief as the Court deems appropriate.

## SEVENTH CLAIM FOR RELIEF

### (Unjust Enrichment)

105.   JY incorporates and re-alleges paragraphs 1 through 104 of this Complaint.

106.   As a result of the conduct alleged herein, David's Bridal has been unjustly enriched to JY's detriment. JY seeks an accounting and disgorgement of all ill-gotten gains and profits resulting from David's Bridal's inequitable activities.

## PRAYER FOR RELIEF

WHEREFORE, JY prays for relief, as follows:

1.   A judgment that David's Bridal has infringed JY's asserted design patents, the JY Trade Dress and JY's asserted trademarks;

2.   An Order and judgment preliminarily and permanently enjoining David's Bridal and its officers, directors, agents, servants, employees, affiliates, attorneys, and all others acting in privity or in concert with them, and their parents, subsidiaries, divisions, successors and assigns, from further acts of infringement of JY's asserted design patents, the JY Trade Dress and JY's asserted trademarks;

3.   A judgment awarding JY damages in an amount to be determined at trial for

David's Bridal's infringement of JY's asserted design patents, the JY Trade Dress and JY's asserted trademarks;

4.     A judgment awarding JY all damages adequate to compensate for David's Bridal's infringement of JY's asserted design patents, the JY Trade Dress and JY's asserted trademarks, and in no event less than a reasonable royalty for David's Bridal's acts of infringement, including all pre-judgment and post-judgment interest at the maximum rate permitted by law;

5.     A judgment awarding JY all damages, including treble damages, based on any design patent infringement found to be willful, pursuant to 35 U.S.C. § 284, together with prejudgment interest;

6.     An Order preliminarily and permanently enjoining David's Bridal and its officers, directors, agents, servants, employees, affiliates, attorneys, and all others acting in privity or in concert with them, and their parents, subsidiaries, divisions, successors and assigns, from directly or indirectly infringing the JY Trade Dress;  from passing off  David's Bridal's bridal dresses as being associated with and or sponsored or affiliated with JY and its trademarks; from committing any other unfair business practices directed toward obtaining for themselves the business and customers of JY; and from committing any other unfair business practices directed toward devaluing or diminishing the brand or business of JY;

7.     Actual damages suffered by JY as a result of  David's Bridal's unlawful conduct, in an amount to be proven at trial, as well as prejudgment interest as authorized by law;

8.     Reasonable funds for future corrective advertising;

9.     An accounting of David's Bridal's profits pursuant to 15 U.S.C. § 1117;

10.    A judgment trebling any damages award pursuant to 15 U.S.C. § 1117;

11.    Restitutionary relief against David's Bridal and in favor of JY, including disgorgement of wrongfully obtained profits and any other appropriate relief;

12.    Costs of suit and reasonable attorneys' fees; and

13.    Any other remedy to which JY may be entitled under federal law, state law, or common law.

Dated: April 7, 2016

Maurice Ross
BARTON LLP

By: _____
Maurice Ross (MR 6852)

420 Lexington Avenue, 18th Floor
New York, NY 10170
mross@bartonesq.com
*Tel.:*  (212) 687-6262
*Fax:*  (212) 687-3667

*Attorneys for the Plaintiff*

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, JY hereby demands trial by jury on all issues raised by the Complaint.

Dated: April 7, 2016

<div style="margin-left:40%">

Maurice Ross
BARTON LLP

By: _____
Maurice Ross (MR 6852)

420 Lexington Avenue, 18th Floor
New York, NY 10170
mross@bartonesq.com
*Tel.:*  (212) 687-6262
*Fax:*  (212) 687-3667

*Attorneys for the Plaintiff*

</div>